In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Conduct the Business of THE TITLE AND MORTGAGE GUARANTY COMPANY OF SULLIVAN COUNTY, NEW YORK.

PRESCOTT W. TOWNSEND, Appellant; SULLIVAN COUNTY TRUST COMPANY and Another, Respondents.

Third Department, January 15, 1936.

*Frank H. Finn* [*Samuel W. Eager* of counsel], for the appellant.

*Ellsworth Baker*, for the respondent Sullivan County Trust Company.

*Benjamin J. Rabin* [*Daniel A. Dorsey* and *Gerald Blumberg* of counsel], for the respondent Mortgage Commission of State of New York.

McNAMEE, J.   By the terms of the mortgage certificates, among other things, the title company was appointed irrevocably the agent for all of the certificate holders, to collect the principal and interest payable on the bond, to satisfy the mortgage, to release parts of the

mortgaged premises, to collect insurance in case of loss, and to exercise every right and option given by the mortgage. It also provided, if the principal of the mortgage were not paid when due, for an extension of time within which the title company might make collection. The certificates made the interests of all of the holders thereof co-ordinate liens on the property mortgaged.

Another provision found in the participating certificate was as follows: " In the event of the payment of a part of said principal sum secured by said mortgage, the company shall have the right to retire any certificates to an equivalent amount or to hold the amount so paid for the benefit of the holders of the certificates of said mortgage." It is this paragraph in particular upon which the respondent trust company relies for the right and power of the title company to substitute a new mortgage for the earlier one, to issue a new certificate thereon to the trust company, and thereby prefer the trust company in payment and exclude the appellant Townsend from a payment of the certificate held by him. The trust company contends that the title company not only had the right to " retire " any certificate, but to purchase the later mortgage with the proceeds of the earlier one, after default, and to issue a new certificate on the later mortgage that would take precedence over appellant's certificate.

We do not regard this contention as sound, either upon a reasonable interpretation of the provision of the certificate, or as a matter of equity. The section quoted was evidently intended, and its reasonable import is, to define and limit the powers and the conduct of the title company in the contemplated liquidation of the mortgage and of the participating certificates. The provision looks to the performance of the obligations of the mortgagor, and of the agent, the title company, and not to a violation of those obligations. It provides what the title company shall do, when there shall be paid " *a part* of said principal sum secured by said mortgage." Then the title company may, reasonably and in that degree of good faith exacted of fiduciaries, pay certificates in whole or in part, or hold the amount so received for the benefit of all the certificate holders. Of course, such a payment or such a holding of funds would be charged with " the finest loyalty " to those whose interests were affected, and the agent bound by a " punctilio of an honor the most sensitive." (*Meinhard* v. *Salmon*, 249 N. Y. 458, 463, 464.)

But there is no provision in the certificate which prescribes the powers or the duties of the title company as to the assets held by it, when there shall be a default, which impairs or destroys the security of the mortgage underlying the certificates. The certificate does

authorize the title company to collect the principal and interest and to sue therefor, and this may well include the right to bring foreclosure. But no where in the certificate is there found any authority to buy in the property at foreclosure sale, and to reconvey it and take back a mortgage for the benefit of less than all of the certificate holders. Nor does it authorize the issue of a second series certificate in any circumstances. Accordingly, the provision of the certificate above quoted has no application to the facts in this case.

Appellant's certificate provides further that it is one of a series, that the amounts to be repaid as specified in all the certificates do not exceed the principal sum of the mortgage, and that " the share assigned by this certificate shall be a co-ordinate lien with all other certificates of said mortgage now or hereafter issued." Thus each certificate holder was put upon notice that he was entitled to no preference in payment. The antecedent course of the fund now in the hands of the Mortgage Commission is easily retraced; it is the proceeds of the mortgage that underlay the original certificates, as those proceeds were converted into the land at the foreclosure sale, and again into the later mortgage which was paid to the rehabilitator. Its identity has not been lost, nor has it become burdened with the rights of a *bona fide* holder for value. The parties here, although making their investments separately, entered into like contracts with a common agent, held like muniments of title referring to each other and granting co-ordinate interests, and they relied on a common security. In such circumstances the trust company is not in a position to claim any advantage resulting from the undue exercise of power by the title company, from the unauthorized issue to it of the second certificate, or from the preference thereby sought to be effected. (*Bound* v. *South Carolina R. Co.*, 71 Fed. 53, 55, and cases there cited; *Newton* v. *Porter*, 69 N. Y. 133, 136; *Clark* v. *McNeal*, 114 id. 287, 294, 295; *Meinhard* v. *Salmon, supra; Matter of People* [*Title & Mortgage Guarantee Co.*], 264 N. Y. 69, 88–91.)

Not only was the trust company put upon notice of the authority of the title company by the contents of the certificate held by it, but the relation of the two companies was such as to imply notice. The president of the title company who signed the second certificate delivered to the trust company was at that time a director of the trust company; and the secretary of the title company, during the life of these certificates, had been a director of the trust company. The transactions between these two companies, in so far as these certificates were concerned, were within the course of business of both. Thereby the trust company was enabled to surrender a

certificate of impaired value for one of equal amount and of unimpaired value, and, therefore, to profit by the exchange. These facts again were sufficient to charge the trust company with notice that the title company was dealing with trust property, to the injury of appellant's interest, and it may not profit thereby. (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 106; *Whiting* v. *Hudson Trust Co.*, 234 id. 394, 409; *Germantown Nat. Bank* v. *Employers' L. A. Corp., Ltd.*, 238 App. Div. 31; affd., 263 N. Y. 654.)

The equality of rights of the appellant and the respondent trust company was not altered by the taking of the new mortgage, or by the issue of the mortgage certificate thereupon; and · the fund in the hands of the Mortgage Commission is applicable according to their respective rights *pro tanto*, first to the payment of the proper charges of the liquidator, and then to the unpaid participating certificates as originally issued.

The order appealed from should be reversed, and the matter remanded to the Special Term for disposition in accordance with this opinion, with costs to the appellant against the respondent trust company.

HILL, P. J., RHODES, CRAPSER and HEFFERNAN, JJ., concur.

Order reversed on the law and facts, and matter remitted to the Special Term for disposition in accordance with opinion, with costs to the appellant against the respondent Sullivan County Trust Company.